207 N.J. Super. 303 (1985)
504 A.2d 135
PROVIDENT SAVINGS BANK, PLAINTIFF,
v.
UNITED JERSEY BANK, DEFENDANT.
Superior Court of New Jersey, Law Division Bergen County.
Decided July 3, 1985.
*304 Barry T. Moskvinitz for plaintiff (Williams, Caliri, Miller & Otley, attorneys).
James J. Kreig for defendant.
*305 POLITO, J.S.C.
This matter involves the liability for the payment of a check, not properly signed pursuant to the deposit contract, between the customer and the bank. Plaintiff seeks recovery against defendant for breach of contract and negligence. Defendant admits liability but claims plaintiff is barred from recovery for failure to notify defendant within the one-year period provided pursuant to N.J.S.A. 12A:4-406(4). Plaintiff argues that the statute is not applicable under the facts in the case.
The parties have filed a stipulation of facts in lieu of a plenary hearing and submitted the issue for determination on said stipulated facts. We adhere to the established principle that we are bound by stipulations of fact. Ambassador Insurance Company v. Montes, 76 N.J. 477, 481 (1978); City of Jersey City v. Realty Transfer Co., 129 N.J. Super. 570 (App. Div. 1974); Stalford v. Barkolow, 31 N.J. Super. 193 (App.Div. 1954).
Plaintiff, Provident Savings Bank (Provident) a savings institution of this State, had a branch office located in the Borough of Leonia since 1978. United Jersey Bank (United Jersey) is a commercial bank, located in the City of Hackensack. Provident, by resolution of its board of directors, on May 18, 1978, authorized its Leonia branch to open a checking account with United Jersey. The resolution provided in paragraph two that any two officers or an officer and a designated employee were authorized to sign checks on behalf of Provident. The resolution further provided that United Jersey was permitted to honor all such checks when signed as authorized. Thereafter, the Leonia branch, pursuant to the resolution, opened an account with United Jersey. The signature card/deposit contract of United Jersey acknowledges the filing of the Provident resolution and further provides that checks required two signatures. Provident also supplied United Jersey with an authorized signature booklet which was revised in September 1978. The signature booklet listed as an officer of Provident, William F. Buckley, *306 an assistant vice president and manager of the Leonia branch, authorized to sign checks on behalf of Provident.
On July 5, 1979 Buckley issued a check payable to two confederates, dated July 5, 1979, without consideration to Provident, in the amount of $22,000. The check contained only the signature of Buckley and was not countersigned by another authorized officer or employee.
On July 11, 1979 the check in the amount of $22,000 was presented to United Jersey, which check was paid by United Jersey in violation of the deposit contract. The check lacked the necessary two signatures. United Jersey was negligent and breached the terms of the deposit contract, which was the proximate cause of the loss sustained by Provident.
On July 24, 1979 Buckley was relieved as manager of the Leonia branch and his services with Provident were terminated. Subsequently, on June 27, 1980, Buckley was convicted in the United States District Court for the District of New Jersey of conspiracy to misappropriate monies belonging to Provident and insured by a federal agency.
On July 31, 1979 United Jersey forwarded the monthly bank statement for the month of July 1979 of the Leonia branch to Provident's main office. The statement contained the check in the amount of $22,000 signed by Buckley but not countersigned by another officer or designated employee. Provident received the statement in the early part of August 1979. On September 30, 1982 Provident first gave notice to United Jersey of the check in the amount of $22,000 lacking the necessary two authorized signatures and demanded credit from United Jersey for said amount on their account. United Jersey has refused to credit Provident with said amount even though admitting wrongful payment of said check. Provident at no time ratified the payment of said check by United Jersey. Defendant, United Jersey, admitted negligence and breach of contract but relies on the provisions of N.J.S.A. 12A:4-406(4) as a bar against Provident's demand.
*307 Provident claims that the check paid by United Jersey was not an unauthorized check within the meaning of the statute but was a check lacking a necessary signature and that the signature on said check was authorized pursuant to a resolution adopted by its board of directors on May 18, 1978.
The issue to be resolved is the interpretation of said statute in relationship to the claim set forth by the parties. The interpretation of the statute has never been previously resolved in this state with regard to the meaning of an unauthorized signature pursuant to N.J.S.A. 12A:4-406(4).
N.J.S.A. 12A:4-406(4) provides as follows:
Without regard to care or lack of care of either the customer or the bank a customer who does not within one year from the time the statement and items are made available to the customer (subsection (1)) discover and report his unauthorized signature or any alteration on the face or back of the item or does not within three years from that time discover and report any unauthorized indorsement is precluded from asserting against the bank such unauthorized signature or indorsement or such alteration. [Emphasis supplied]
N.J.S.A. 12A:1-201(43) defines an unauthorized signature as follows:
Unauthorized signature or indorsement means one made without actual or apparent authority and includes a forgery.
In Brighton Inc. v. Colonial First National Bank, 176 N.J. Super. 101 (App.Div. 1980), aff'd 86 N.J. 259 (1981), the action arose through the acts of a "faithless employee". There the employee had authority to sign checks, but in many instances he forged the name of a principal whose name was required on a company check as drawer. Plaintiffs notified the drawee bank of checks bearing the forged signatures of a drawer more than one year after the last check was paid. The court in its interpretation of N.J.S.A. 12A:4-406(4) with regard to notice beyond the one-year period on the forged checks stated:
The one-year period limitation in § 4-406(4) is not merely a statute of limitations, but a rule of substantive law barring absolutely a customer's untimely asserted right to make such a claim against the bank.
The purpose of the statute is to have one uniform rule throughout the country in place of the various time periods that existed prior to the U.C.C. As stated in Official Comment 7 thereto, the statute sets forth

*308 ... a public policy in favor of imposing on customers the duty of prompt examination of their bank statements and the notification of banks of forgeries and alterations and in favor of reasonable time limitations on the responsibility of banks for payment of forged or altered items . ....
See Official Comment 1; Bailey, Brady on Bank Checks (5th Ed. 1979 § 26.16). Rainbow Inn, Inc. v. Clayton Nat'l Bank, 86 N.J. Super. 13, 23 (App.Div. 1964) recognizes that the purpose of this statute "was to fix an absolute time limit within which notice of the forgery must be given by the depositor to the bank and beyond which, if notice is not given, the bank would not be liable for paying a forged instrument and charging the depositor's account." See Official Comment 5 to U.C.C. § 4-406. [176 N.J. Super. at 109]
The issue as to timely notice also was raised in Western Un. Tel. Co. v. Peoples Nat'l Bank Lakewood, 169 N.J. Super. 272 (App.Div. 1979). The Appellate Division in reversing a judgment in favor of Western Union stated:
.... a customer owes the duty to his bank to examine cancelled checks and statements received from the bank and to give timely notice of any irregularities." Arrow Builders Supply Corp. v. Royal Nat'l Bank of N.Y., 21 N.Y.2d 428, 431, 235 N.E.2d 756, 758, 288 N.Y.S.2d 609, 612 (Ct.Appl. 1968); Forbes v. First Camden Nat'l Bank & Trust Co., 25 N.J. Super. 17, 23 (App.Div. 1953). This duty has been recognized by statute, U.C.C. § 4-406(1); N.J.S.A. 12A:4-406(1); N.J.S.A. 17:9A-229.1 to 229.5; and time limitations for bringing suit may be imposed by statute U.C.C. § 4-406(4); N.J.S.A. 12A:4-406(4); N.J.S.A. 17:9A-229.2 and 229.3; Duralite Co. Inc., v. New Jersey Bank & Trust Co., 97 N.J. Super. 48 (App.Div. 1967); Billings v. East River Savings Bank, 33 A.D.2d 997, 307 N.Y.S.2d 606 (App.Div. 1970), or by agreement between the bank and its customer. See New York Credit Men's Adjustment Bureau, Inc. v. Manufacturers Hanover Trust Co., 41 A.D.2d 912, 343 N.Y.S.2d 538 (App.Div. 1973). [at 278]
However, plaintiff, Provident, claims that N.J.S.A. 12A:4-406(4) is inapplicable in the instant case as said statute is limited only to unauthorized signatures and not to incomplete signatures. Provident argues that in the absence of a second signature, the check did not contain the signature of Provident; that the absence of the second required signature is the same as if there were no drawer signature at all; that without it, the check is not a complete negotiable instrument. Provident relies on N.J.S.A. 12A:3-104(1)(a) which in pertinent part states:
(1) any writing to be a negotiable instrument within this chapter must
(a) be signed by the maker or drawer;
*309 Plaintiff contends that the absence of a necessary drawer signature does not make the incomplete signature "unauthorized."
N.J.S.A. 12A:3-401(2) defines signature:
Signature is made by use of any name, including any trade or assumed name upon an instrument or by any word or mark used in lieu of a written signature.
Provident further contends that pursuant to N.J.S.A. 12A:1-201(43) drawer's signature was not made without actual, implied or apparent authority "or forged," it was in effect, not made at all. Therefore, Provident's signature never appeared and the check is not a complete negotiable instrument. As required by N.J.S.A. 12A:3-104(1)(a) to be a negotiable instrument, the writing must be signed by the drawer. Plaintiff's argument is that an incomplete drawer signature is not an "unauthorized signature."
The courts of other states have interpreted N.J.S.A. 12A:4-406(4) with regard to the definition of an "unauthorized signature" and opinion is divided as to the intent of the statute. The decisions of the courts in other jurisdictions shall be reviewed to determine the application of the statute to the factual context of the present action.
In Wolfe v. University National Bank, 270 Md. 70, 310 A.2d 558 (Sup.Ct. 1973), aff'd, 279 Md. 512, 369 A.2d 570 (Sup.Ct. 1977), the deposit agreement required the signatures of two designated persons. In violation of the agreement the bank paid checks with one signature. The bank was notified of its wrongful payment two and one-half years after its payment of the first check with one signature.
The Court of Appeals of Maryland said:
The infirmity lay not in the presence of an authorized signature on the check but in the absence of a second authorized signature ... which was essential under the agreement with the Bank. [310 A.2d at 561]
In G & R Corp. v. American Security and Trust Co., 523 F. 2d 1164 (D.C. Cir.1975), a real estate joint venture deposit agreement required two signatures. The joint venture discovered insufficient signatures but did not report it to the bank for *310 more than one year. The bank raised the defense of the one-year limitation of § 4-406(4). The court said that "the absence of one of two or more necessary signatures does not constitute an unauthorized signature within § 4-406."
The court further stated:
It may be possible to stretch the plain meaning of the definition "without actual, implied or apparent authority" to include a signature which is authorized only in conjunction with another signature or in the absence of an alternative signature. That interpretation, however, suggests other ramifications which we find unsatisfactory. [at 1169]
In Far West Citrus, Inc. v. Bank of America, 91 Cal. App.3d 913, 154 Cal. Rptr. 646 (2 Dist. 1979), the California Court of Appeals rejected the bank's argument that § 4-406(4) bars a claim for a bank's payment of a check having less than the required number of drawer signatures if the claim is not raised within a year. There, the corporation's deposit agreement required two signatures on each check. The bank paid and charged the customer's account for checks not having the required second signature. The court reversed the trial court and held that the signature was incomplete rather than unauthorized and therefore § 4-406(4) did not bar the claim.
In Madison Park Bank v. Field, 64 Ill. App.3d 838, 21 Ill.Dec. 583, 381 N.E.2d 1030 (Ct.App. 1978), the Appellate Court of Illinois rejected the argument that § 4-406(4) requires a customer to give notice to the bank within one year of payment of a check missing one of the required drawer signatures. A check for $9,000 was drawn and signed by only one partner and misapplied to non-partnership purposes. The court relying on § 1-201(43) for the definition of "unauthorized" stated:
The signature ... which appeared on the check in question was an authorized one. The check was not properly payable because of an unauthorized signature or an altered one, but because there was an absence of a signature and therefore there was a violation of the agreement entered into between the counterplaintiffs and the bank.... Had this statute been intended to include protection to a bank where there is an absence of a signature such could have been written into the law. That such a provision is not in the law is readily understandable since an unauthorized, altered or forged signature would be *311 more readily discoverable, however, discovering a missing signature placed no undue onus on a bank. [21 Ill.Dec. at 585, 381 N.E.2d at 1032]
Defendant, United Jersey, argues that the signature of plaintiff employee Buckley, was an unauthorized signature within the meaning of N.J.S.A. 12A:4-406(4). United Jersey relies on the holding in Pine Bluff National Bank v. Kesterson, 257 Ark. 813, 520 S.W.2d 253 (Sup.Ct. 1975); King of All Manufacturing Inc. v. Genesee Merchants Bank & Trust Co. 69 Mich. App. 490, 245 N.W.2d 104 (Sup.Ct. 1976); Rascar, Inc. v. Bank of Oregon, 87 Wis.2d 446, 275 N.W.2d 108 (Ct.App. 1978); Trust Company Bank v. Atlanta IBM Employees Federal Credit Union, 245 Ga. 262, 264 S.E.2d 202, 204 (Sup.Ct. 1980); First National Bank of Mercedes v. La Sara Grain Company, 646 S.W.2d 246 (Tex. Ct. App. 1982).
Pine Bluff National Bank, supra, involved a suit by two of three trustees of a trust fund against a third trustee and a defendant and the bank, to recover on checks paid by the bank only on the signature of the third trustee. The deposit contract required all three signatures. The court held that the signature of only one trustee was an unauthorized signature and that suit was barred by the one-year absolute notice period by Arkansas Ark.Stat.Ann. § 85-4-406(4). The court said:
The principal question to be resolved is whether the checks drawn on Trust Fund checking account were paid on unauthorized signatures. Appellee Fikes contends they were not, because no signatures were forged and the signatures of Harris was authorized. From reading the statute, the committee comment and the U.C.C. definition, we conclude that the coverage of § 85-4-406 is much broader than that and that the check was paid upon an "unauthorized signature". The authorized signature of Trust Fund required the joint signatures of three trustees. Any purported signature of Trust Fund with fewer signatures was an unauthorized signature. [520 S.W.2d at 258]
The Michigan Court of Appeals in King of All Manufacturing Inc. v. Genesee Merchants Bank & Trust Co., 69 Mich. App. 490, 245 N.W.2d 104 (Ct.App. 1976) wrote:
Because of the agreement between the Company and defendant, neither McInnes nor Phillips alone had authority to execute the company's signature. Both of their signatures were necessary to make the signature of the company on a check an authorized one. The signature of the company on a check lacking Phillips signature was an unauthorized signature of defendant's customer, the *312 company. M.C.L.A. § 440 4406(4), M.S.A. § 19-4406(4) is applicable here. [245 N.W.2d at 105]
In Rascar, Inc., supra, a suit was brought by a corporate customer against a bank for paying a series of checks bearing only one of the two signatures required by the deposit contract. The bank defended claiming that the one signature on the checks was an unauthorized signature and that the customer's failure to discover and report its unauthorized signature within one year barred its recovery. The court stated:
When a bank's customer directs the bank to pay only those checks which bear 2 signatures, a two signature check is the "authorized signature" of the customer. The customer had not authorized the bank to pay 1 signature checks, so a check with only 1 signature does not have an authorized signature.... [275 N.W.2d at 111]
In Trust Company Bank, supra, the Georgia Supreme Court in ruling on a check with a missing endorsement held:
However, to rule that the statute limiting the bank's liability to a specified span of time does not apply because the words "unauthorized indorsement" could not include a missing endorsement presents too narrow a construction of the statute so as to circumvent the policy behind it. * * *
As a final answer to whether the term "unauthorized endorsement" would include a missing endorsement, the definition of an unauthorized endorsement is "one made without actual, implied or apparent authority and includes a forgery". Code Ann. § 109A-1-201(43). (Emphasis supplied). This definition centers on the exercise of authority, as well as requiring that the signature not be an outright forgery. Since a joint payee endorsing the check alone would not have the requisite amount of authority so that a bank paying a check over the sole endorsement of one joint payee would be liable for its wrongful payment. (Ins. Co. of N.A. v. Atlas Supply Co., 131 Ga. App. 1(4), 172 S.E.2d 632 (1970)), that incomplete endorsement would amount to an unauthorized one. [264 S.E.2d at 204]
Finally, in First National Bank of Mercedes, supra, the plaintiff company sued to recover funds converted by a dishonest employee over a three and one-half-year period. The bank had paid checks with only the signature of the employee when the corporate resolution required the signature of two individuals. The issue before the Texas Court of Appeals was whether the payment of a check with less than the required number of signatures was an "unauthorized signature" within the meaning of § 4-406 of the Texas Business and Commerce Code. The *313 court reviewed the holding in Rascar, Inc., supra and Pine Bluff National Bank, supra, and decided that said signature was an "unauthorized signature" within the meaning of § 4-406(d). The court stated:
We believe that since 4.406(d) of the Tex.Bus. & Com.Code endeavors to provide finality that is important for the security of banking institutions, the better view is, and we hold as a matter of law, that when a bank honors a check or withdrawal on less than the required number of signatures, the signature is an unauthorized signature within the meaning of 4.406(d). [at 252]
The adoption by the Uniform Commercial Code of § 4-406(4) as stated in Brighton, Inc., supra, was to establish a uniform rule in place of the various time periods that existed prior to the code. The classification of a "missing signature" instrument as an exception would avoid the finality of the statute. The definitions promulgated in the code were intended to include all the circumstances which could arise in commercial transactions. The definition of "unauthorized signature" in N.J.S.A. 12A:1-201(43) includes those instruments lacking the necessary signatures. The code does not set forth a definition of a "missing signature" in either N.J.S.A. 12A:1-201 or N.J.S.A. 12A:4-104. The promulgation of the code without such a definition, can be interpreted as the intent of the authors to include the same within the provisions of N.J.S.A. 12A:1-201(43). The addition of a new meaning of the statute would defeat the purpose of the code as stated in Brighton, Inc., supra, and be counterproductive of the "purposes and policies of the Act" as set forth in N.J.S.A. 12A:1-102(2).
The broader interpretation of N.J.S.A. 12A:1-201(43) includes "missing signature" checks within the definition of the statute. The check issued by Provident's former employee, in violation of the terms and conditions of the resolution and the deposit contract, was an unauthorized signature pursuant to N.J.S.A. 12A:1-201(43). Provident's failure to notify United Jersey within the one-year period required by N.J.S.A. 12A:4-406(4), *314 bars recovery for the amount of the check paid due to the negligence of defendant, United Jersey.
Judgment for defendant.