[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO STRIKE
The plaintiff has filed a motion to strike six of the seven special defenses. The complaint contains three counts; breach of agreement, negligence, and breach of fiduciary duty. The plaintiff had a commercial checking account at the defendant bank, and the terms of the agreement between the parties included a provision that two signatures were required on checks drawn on the account. The plaintiff claims that the bank improperly honored numerous checks between February 1990 and January 1991 which contained only one signature. Most of the six challenged special defenses concern all three counts of the plaintiff's complaint.
A motion to strike can be used to challenge the legal sufficiency of a special defense. Connecticut Practice Book § 152(5); Mingachos v. CBS, Inc., 196 Conn. 91, 108. A motion to strike admits all facts well pleaded, but does not admit legal conclusions or the truth or accuracy of opinions stated in the pleading. Id. The allegations are given the same favorable construction a trier would be required to give it in admitting evidence under the special defense, and if the facts provable under the allegations would support a defense the motion to strike must be denied. Id., 108, 109. See also Rowe v. Godou, 209 Conn. 273,278.
The first special defense is implied modification of the agreement concerning the checking account. It states that every check drawn on the account on and after October 6, 1989, was signed by either one of the two authorized signatories, but that no checks were ever signed by both of them. It also states that "to the extent that the account agreement ever required two signatures on each check, the agreement was thereby impliedly modified to require CT Page 4747-A only one signature." The plaintiff claims that there was no mutual assent to modify the agreement. While the general rule is that modification of a contract requires mutual assent by the parties as to its meaning and conditions, First Hartford Realty Corp. v.Ellis, 181 Conn. 25, 33,; Lar-Rob Bus Corporation v. Fairfield,170 Conn. 397, 402, an existing contract may be modified or abrogated by a new contract arising by implication from the conduct of the parties. Malone v. Santora, 135 Conn. 286, 292; Rowe v. Cormier,189 Conn. 371, 373. Whether the acts of the parties show intention to modify or abandon the original agreement is usually a question of fact. Id, 373; First Hartford Realty Corporation v. Ellis, supra, 33. Although contracts modifying earlier ones must be supported by new consideration, mutual promises are sufficient consideration for a modification. Harris Calorific Sales Co. v.Manifold Systems, Inc., 18 Conn. App. 559, 563. If there was an implied modification of the agreement to require two signatures on the checks, the plaintiff cannot recover. Factual questions such as intent of the parties cannot be resolved on a motion to strike, and depending upon the evidence produced at trial, the defendant may have an implied modification defense. The allegations of the defense are sufficiently specific to comply with § 109 of the Practice Book.
The second and third special defenses are waiver and estoppel. The defendant contends that the requirement of two authorized signatures on each check was waived by the course of conduct of the plaintiff by having all checks issued with only one signature. The related defense of estoppel contains the additional factual allegations that the cancelled checks drawn on the account and a statement of the account was given to the plaintiff each month, but the plaintiff never notified the bank that any checks were being improperly paid over only one signature.
Waiver is the intentional relinquishment of a known right.Jenkins v. Indemnity Insurance Co., 152 Conn. 249, 257; HanoverInsurance Co. v. Fireman's Fund Insurance Co., 217 Conn. 340, 351. The plaintiff had the right under the agreement to require the bank not to process checks unless they had two signatures. Presumably the plaintiff wanted two signatures for its own protection. However, there is no reason why that contractual right could not be abandoned either completely or with some transactions. Waiver can be express or may consist of acts of conduct from which a waiver may be implied. National Casualty Insurance Co. v. Stella,26 Conn. App. 462, 464. Waiver may be implied from acts or conduct if it is reasonable to do so. Wadia Enterprises, Inc. v. Hirschfeld, CT Page 4747-B224 Conn. 240, 252. An estoppel by conduct occurs when one party says or does something that is intended or calculated to induce the other party to believe in the existence of certain facts and to act upon that belief, and the other party changes its position in reliance on statement or conduct, and thereby incurs some injury.Hanover insurance Co. v. Fireman's Fund Insurance Co., supra, 351;Colleran v. Cassidento, 27 Conn. App. 386, 392; Novella v. HartfordAccident Indemnity Co., 163 Conn. 552, 563-64. Implied waivers and estoppel by conduct are so similar that they are nearly indistinguishable. Hanover Insurance Co. v. Fireman's FundInsurance Co., supra, 351-52; S.H.V.C., Inc. v. Roy, 188 Conn. 503,510. Both waiver and estoppel require a factual determination whether the conduct of the plaintiff-customer went sufficiently far to amount to a relinquishment of its right to insist upon two signatures, and whether the bank was induced by the course of conduct to reasonably assume that two signatures were no longer required by the customer. Construing the facts admitted under the special defenses most favorably to the bank, there is arguably a course of conduct by the customer, established by the number of checks honored over a long period of time, and without objection by the customer upon receiving monthly statements and cancelled checks, to lead the bank to believe that the customer was no longer insisting on two authorized signatures on the checks.
The plaintiff contends that the waiver and estoppel special defenses are not valid because this creates a duty on the customer that is not imposed by § 42a-4-406 or any other provision of the Uniform Commercial Code. The statute relied upon imposes upon a bank customer the duty to exercise reasonable promptness to examine the bank's statement to determine whether any payment was not authorized because of an alteration of a check or because a signature on the check was not authorized. From this the plaintiff argues that it has no liability to inspect for missing signatures. This argument misses the mark. The special defense is not based on failure to inspect the cancelled checks, but rather on whether the plaintiff's conduct was a waiver of its rights and was reasonably relied upon by the defendant bank.
The sixth special defense claims contributory negligence by the plaintiff in failing to detect and report to the bank that only one of the authorized signers, but not both, had signed the checks. The seventh special defense contains a related claim that the plaintiff failed to mitigate damages by examining the cancelled checks returned by the bank each month and notifying the defendant that the checks were being improperly paid over one signature which CT Page 4747-C would have stopped the payments before the losses alleged in the complaint. The existence of a duty of care is an essential element of negligence. Calderwood v. Bender, 189 Conn. 580, 584. "A duty to use care may arise from a contract, from a statute, or from circumstances under which a reasonable person, knowing what he knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result from its act or failure to act." Id, 584; O G Industries, Inc. v. New Milford,29 Conn. App. 783, 790. What care is required depends upon the circumstances and is a question of fact. The sixth special defense applies only to the second count of the complaint, which claims that the bank was negligent in paying the checks with only one signature. Contributory negligence is a valid defense in a negligence claim and may be asserted under § 52-572h of the General Statutes. The seventh special defense, a duty to mitigate damages, can, if a proper factual basis is established at trial, be a partial defense to claims of breach of contract, negligence and breach of fiduciary duty. The plaintiff contends as to both of these defenses, that it had no duty to examine the checks and report missing signatures to the bank, relying in part on § 42a-4-406 of the General Statutes. Whether or not that statute applies to this case, the plaintiff still has a duty to use reasonable care, and the evidence may show that a reasonable person in the plaintiff's position should have noticed the problem and acted differently, particularly where it occurred over a long period of time.
The fourth special defense is that the conduct of the plaintiff, in allowing the defendant to continue to process the checks with only one signature over a period of time, is barred by section § 42a-4-406(4) of the General Statutes. The version of the statutes which controls is the one which was in effect between February 1990 and January 1991 when the checks were presented and paid. (The current version of the statute, as amended by Public Act 91-304, effective October 1, 1991 makes substantive change which applies only to events subsequent to this case.) The applicable statute reads as follows:
 "(4) Without regard to care or lack of care of either the customer or the bank, a customer who does not within one year from the time the statement and items are made available to the customer as provided in subsection (1) discover and report his unauthorized signature or any alteration on the face or back of the item or does not within three years from that time discover and report any CT Page 4747-D unauthorized endorsement is precluded from asserting against the bank such unauthorized signature or endorsement or such alteration."
This action was commenced on December 13, 1993, or more than three years after most of the checks were paid, but clearly more than one year from the time the bank statements containing cancelled checks were returned by the bank to the plaintiff. Section 42a-4-406(4) applies to unauthorized signatures or alteration of checks. Whether or not this statute applies where checks were paid with only one authorized signature rather than two signatures depends on whether the phrase "unauthorized signature" in the statute covers missing signatures in addition to forged signatures and checks signed by unauthorized persons.
There is a split of authority among the jurisdictions which have considered this question. 7 ALR 4th 655, 676-682. Some of the cases rely upon the definition of "unauthorized signature" under the
Uniform Commercial Code. "Unauthorized signature" is defined in42a-1-201(43) as "one made without actual, implied, or apparent authority and includes a forgery." Some cases hold that where the customer directed the bank to pay only checks with two signatures, one signature checks were an unauthorized signature, and the one year time limit in § 4-406(4) applies. Pine Bluff National Bank v.Kesterson, 257 Ark. 813, 520 S.W.2d 235 (1975); Cooley v. FirstNational Bank of Little Rock, 276 Ark. 387, 635 S.W.2d 250 (1982);King of All Manufacturing, Inc. v. Genesee Merchants Bank TrustCo., 69 Mich. App. 490, 245 N.W.2d 104 (1976); Rascar, Inc. v. Bankof Oregon, 87 Wis.2d 446, 275 N.W.2d 108 (1978), Jacoby TransportSystems, Inc. v. Continental Bank, 277 Pa. Super. 440, 419 A.2d 1227
(1980); Southern Contract Carpet, Inc. v. County National Bank ofSouth Florida, 528 So.2d 42 (Fla. 3rd DCA 1988); Provident SavingsBank v. United Jersey Bank, 207 N.J. Super. 303, 504 A.2d 135 (1985);First National Bank of Mercedes v. LaSara Grain Co., 646 S.W.2d 246
(Tex.Civ.App. 1982). This line of cases takes the view that the meaning of "unauthorized signature" encompasses more than forgeries or alterations for a check signed by the wrong person, and also includes checks with a single signature since the customer had not authorized the bank to pay one signature checks. Other cases have adopted the position that a missing signature on the check is not an "unauthorized signature" under § 4-406(4), because § 1-201(43) does not define "unauthorized signature" as including missing signatures. See Madison Park Bank v. Field, 64 Ill. App.3d 838, 381 N.E.2d 1030
(1978); Wolfe v. University National Bank, 270 Md. 70, 310 A.2d 588
CT Page 4747-E (1973); G R Corp. v. American Security Trust Co., 523 F.2d 1164
(DC Cir. 1975); Far West Citrus, Inc. v. Bank of America,91 Cal.App.3d 913, 154 Cal.Rptr. 464 (1979). These cases rely in part on the undue burden on the bank which has the signature card in its possession. However, this overlooks the fact that the missing signature is the signature of the customer who claims that his account has been improperly debited, an error which can be easily seen when the bank returns the cancelled checks to the customer. See King of All Manufacturing, Inc. v. Genesee Merchants Bank Trust Co., 245 N.W.2d at 105; Rascar, Inc. v. Bank of Oregon, supra, 275 N.W.2d at 111.
The first line of case is more persuasive. See SouthernContract Carpet, Inc. v. County National Bank of South Florida, supra, 44. Since § 42a-4-406(4) contains a one year statute of limitations which may apply to the checks in this case, it is a valid special defense.
The motion to strike the first, second, third, fourth, sixth, and seventh special defenses is denied.
ROBERT A. FULLER, JUDGE